Natasha E. Daughtrey (SBN 319975)
NDaughtrey@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 South Figueroa Street
41st Floor
Los Angeles, CA 90017
Tel: (213) 426-2500

I. Neel Chatterjee (SBN 173985)
NChatterjee@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: (650) 752-3100

*Attorneys for Plaintiff*
*Additional Counsel listed*
*on signature page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| X1 DISCOVERY, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Civil Action No. 8:23-cv-2415 <br><br> **JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff X1 Discovery, Inc. ("X1"), brings this Complaint against Defendant Microsoft Corporation ( "Microsoft") for patent infringement.

## **NATURE OF THE ACTION**

1.     This a case to stop the theft of X1's patented technology by Microsoft,

alleging a civil action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*, including 35 U.S.C. § 271, 281, 283, 284, and 285.

2.    In the early 2000s, software engineers at X1 recognized that the need to find and access digitally stored information and applications quickly and efficiently was growing, and that conventional search software was inadequate. They worked tirelessly to develop technology that would shift the search paradigm and allow users to find and act upon information as fast as possible.  With hard work and ingenuity, they developed novel and reactive search methods and systems that displayed search results as fast as a user could type, updating results in real time, and in less steps.

3.    X1 was built upon these inventions—a small company named after the Bell X-1, the first airplane to exceed the speed of sound.  Like its namesake, X1 sought to develop products and technology that could deliver search results faster than ever before.  X1 invested significant time and resources developing its ground breaking and award-winning flagship product, X1 Search™, which is based on the technology protected by X1's valid and enforceable U.S. Patent Nos. 7,370,035 ("the '035 Patent," attached as Exhibit 1), 9,633,139 ("the '139 Patent," attached as Exhibit 2) and 10,552,490 ("the '490 Patent," attached as Exhibit 3) (collectively, the "Asserted Patents.").  The inventions of the Asserted Patents are central to X1's product offerings.

4.    Microsoft directly infringes, either literally or under the doctrine of equivalents, and indirectly infringes one or more claims of the Asserted Patents.

**THE PARTIES**

5.    Plaintiff X1 Discovery, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 251 South Lake Avenue, Suite 800, Pasadena, California 91101.

6.    On information and belief, Defendant Microsoft Corporation is a Washington corporation with a principal place of business located at 1 Microsoft

Way, Redmond, Washington 98052-8300.  On information and belief, Microsoft causes and controls the sale, offer for sale, and distribution of its products in the State of California and in this District.

## JURISDICTION AND VENUE

7.     This is a civil action, for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*, including 35 U.S.C. § 271, 281, 283, 284, and 285.

8.     This Court has original subject matter jurisdiction over X1's claims for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 35 U.S.C. §§ 271 *et seq*.

9.     This Court has personal jurisdiction over Defendant because Defendant regularly transacts business in this District by, among other things, offering Defendant's products and services to customers, business affiliates and partners located in this District.  In addition, Defendant has committed acts of direct infringement of one or more claims of the Asserted Patents in this District.

10.     Venue is proper in this judicial district for X1's claims for patent infringement pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400(b) because Defendant is subject to personal jurisdiction in this District, transacts business and is registered to transact business within this District and offers for sale in this District products that infringe, or induce or contribute to the infringement of, one or more claims of the Asserted Patents.  On information and belief, Defendant has regular and established places of business in this District in at least the following locations: 3 Park Plaza, Suite 1600, Irvine, CA 92614; 3333 Bristol Street, Suite 1249, Costa Mesa, CA 92626; and 13031 West Jefferson Blvd., Suite 200, Los Angeles, CA 90094.

## FACTUAL BACKGROUND

11.     X1 is the sole owner by assignment of all right, title, and interest in all three Asserted Patents, which generally relate to computing devices utilizing novel

3

indexed search systems and components thereof.  *See* Exhibits 1-3.

12.    Conventional search application programs are slow and cumbersome to use.  If a search engine returns unsatisfactory results, then the user needs to edit the search terms, initiate another search, and review the new results.  Search engines have limited search filtering, or omit specific types of search targets. Searches may also take an excessive amount of time to complete.

13.    X1 software engineers recognized the limitations of conventional searching and developed novel methods and systems for search indexing—creating incremental or reactive searching of a variety of search targets, including files, emails, email attachments, Web pages, and specific databases that were significant technological improvements over the prior art.  In recognition of these groundbreaking inventions, the United States Patent and Trademark Office subsequently granted the Asserted Patents protecting this novel technology.

14.    In 2003, X1 Technologies, Inc. ("X1 Technologies") was founded. The company spent significant time and resources developing its flagship product: X1 Search™.  X1 Search™ is an award-winning, next generation productivity application, which simplifies the way users search and act upon desktop files, items in cloud repositories such as OneDrive, emails, attachments, SharePoint and more. X1 Search™'s single, unified interface and fast-as-you-type search with hit highlighting and full-fidelity preview of results provides immediate visibility into the critical information users need.

15.    In 2011, X1 Technologies was reorganized and became X1 Discovery, Inc. ("X1").  X1 currently has two product offerings: X1 Search™ and X1 Enterprise Collect™.  X1 Search™ is an embedded feature of each of these products and X1's business is built around these product offerings.

16.    Defendant makes, uses, sells, and/or offers for sale products that infringe at least one claim of each of the Asserted Patents, including at least its Surface Laptop Go 3, Surface Laptop Go 2, Surface Laptop 5, Surface Laptop

Studio, and Surface Laptop Studio 2 (collectively, the "Accused Laptop Products").

Each Accused Laptop Product comes installed with Microsoft Windows 10 or 11,

which runs infringing searching software, Microsoft Search.  Defendant also

separately makes, uses, sells, and/or offers for sale Microsoft Windows 10 and 11

and Windows 365, which can be installed on users' computers to run Microsoft

Search (collectively, the "Accused Windows Products").

## THE ASSERTED PATENTS

**The '035 Patent**

17.    X1 is the owner by assignment of all right, title and interest, including

the right to sue for damages, in and to the '035 Patent.

18.    The '035 Patent is entitled "Methods and Systems for Search

Indexing" and names William Gross and Steven Lee Colwell as inventors.  The

'035 Patent issued on May 6, 2008, based on U.S. Application No. 10/654,588,

filed on September 3, 2003.  The '035 Patent expired on October 1, 2023.  A copy

of the '035 Patent is attached to the Complaint as Exhibit 1.

19.    The '035 Patent is valid and enforceable under United States Patent

Laws.

20.    The '035 Patent relates to improvements in computer search

technology and data processing, and more particularly to methods and systems for

locating data.[1]  Prior to the claimed invention conventional searching using existing

search engines was slow and cumbersome, for example, requiring a user to type in

search terms, click on the search, and review the results.  '035 Patent at 1:32-35.  If

the user was not satisfied with the search results, as would often be the case where

too many results were returned or items that were not of interest were found, then

the user would be required to edit the search terms, click search, and again review

---

[1] X1 provides the following general description of the '035 Patent.  This description is not
intended to limit, define, or otherwise affect the construction and/or application of the '035
Patent.

5

the results. *Id.* at 1:35-39.  In addition, many conventional search engines only provided for limited search filtering, where the user was limited to filtering search results by date, file location, and file contents instead of being able to filter or organize the search results by specific types of search targets such as email, web pages, or other type of files. *Id.* at 1:39-42.  Such conventional searching also required the user to develop deliberate and tedious search stings and strategies. *Id.* at 1:62-65.

21.     To address these problems with conventional searching, the '035 Patent discloses novel methods and systems for incremental or reactive searching of a variety of search targets, including files, emails, email attachments, Web pages, and specific databases, effectively improving and increasing the speed of searching, organizing, and accessing files in a data storage system of a computer system. *See e.g.*, '035 Patent at 2:9-13.  Unlike conventional searching, because a search is performed incrementally, the search results are provided or narrowed substantially and immediately after each character in a search string is entered by the user. *Id.* at 2:13-16.  This provides the user with immediate feedback as the search string is entered, so the user can quickly decide whether the search string needs to be modified, improving search accuracy and allowing for quicker access to the file or application the user needs. *Id.* at 2:16-21.

22.     Specifically, the '035 Patent teaches in certain embodiments a method of performing a search using a first search string and a second string in the search field, wherein the first and second strings are separated by a string separator character in the first search field, and incrementally locating a first group of documents that has at least the first word in the first string and receiving a second string in the first search field, wherein in response to the second string, incrementally locating a second group of documents that has at least a second word that begins with the second string.  The '035 Patent also teaches in certain embodiments a method of performing a search where in response to receiving the

first and second strings the identified documents are displayed.  The '035 Patent also teaches in certain embodiments that the displayed documents are automatically highlighted for occurrences of the words used in the search strings.  The '035 Patent also teaches a search apparatus comprising instructions configured to execute the claimed search methods.

23.    The methods and systems disclosed in the '035 Patent were neither well-known nor conventional to skilled artisans as of the priority date.  The prior art does not teach or suggest the claimed reactive and incremental searching methods.  For example, the '035 Patent teaches a method of performing a search in which the system first receives a first partial search string in a first search field, and a second partial search string in the first search field, wherein the first and second partial search strings are separated by a string separator character in the first search field.  When the first string is detected, an incremental search is initiated, which can search a plurality of types of documents (including word processing documents and emails) that has at least a first word that begins with the first string.  The search results are then updated with each successive character, including in response to a second string.  In response to receiving the second string, an incremental search is initiated for a second group of documents that has at least a second word that begins with the second string and one or more documents that are included in each of the first and second groups of documents can include those that include the term from the first search string and the second search string.  The resulting documents are then displayed for the user.  Prior art methods for searching were much slower and did not allow for incremental updating of search results.  Thus, the claimed invention specifically improves computer technology at least with regard to the accuracy and efficiency with which searches can be conducted and generally improves user interfaces by providing users with quicker and easier access to desired files or applications using  a first and second search string.  The claimed invention is thus directed to a technological improvement, and not an abstract idea.

24.     As described above, the '035 Patent's claims are inventive and describe a substantial improvement in the art of computer searching.  Namely, the claims describe methods for performing searches in a manner that is more than just the performance of well-understood, routine, or conventional activities that were previously known in the field.  The conventional searching methods predating the '035 Patent did not involve incrementally updating search results in real time as each successive character is entered.  Additionally, the claimed methods allow users to incrementally search over at least two strings and displays results containing both strings, a marked improvement over the older searching techniques.  These searching techniques and strategies were not routinely used or conventional before the '035 Patent was filed.

**The '139 Patent**

25.     X1 is the owner by assignment of all right, title and interest, including the right to sue for damages, in and to the '139 Patent.

26.     The '139 Patent is entitled "Methods and Systems for Search Indexing" and names William Gross and Steven Lee Colwell as inventors.  The '139 Patent issued on April 25, 2017, based on U.S. Application No. 14/507,519, filed on October 6, 2014.  The '139 Patent expired on October 1, 2023.  A copy of the '139 Patent is attached to the Complaint as Exhibit 2.

27.     The '139 Patent is valid and enforceable under United States Patent Laws.

28.     The '139 Patent relates to improvements in computer search technology and data processing, and more particularly to methods and systems for locating data.[2]  Prior to the claimed invention conventional searching using existing search engines was slow and cumbersome, for example, requiring a user to type in search terms, click on the search, and review the results.  '139 Patent at 1:38-41.  If

---

[2] X1 provides the following general description of the '139 Patent.  This description is not intended to limit, define, or otherwise affect the construction and/or application of the '139 Patent.

8

the user was not satisfied with the search results, as would often be the case where too many results were returned or items that were not of interest were found, then the user would be required to edit the search terms click search, and again review the results. *Id.* at 1:41-45.  In addition, many conventional search engines only provided for limited search filtering, where the user was limited to filtering searches by date, file location, and file contents instead of being able to filter or organize the search results by specific types of search targets such as email, web pages, or other type of files. *Id.* at 1:45-48.  Such conventional searching also required the user to develop deliberate and tedious search stings and strategies. *Id.* at 2:1-4.

29.     To address these problems with conventional searching, the '139 Patent discloses novel methods and systems for incremental or reactive searching of a variety of search targets, including files, emails, email attachments, Web pages, and specific databases, effectively improving and increasing the speed of searching, organizing, and accessing files in a data storage system of a computer system. *See e.g.*, '139 Patent at 2:15-19.  Unlike conventional searching, because a search is performed incrementally, the search results are provided or narrowed substantially and immediately after each character in a search string is entered by the user. *Id.* at 2:19-22.  This provides the user with immediate feedback as the search string is entered, so the user can quickly decide whether the search string needs to be modified, improving search accuracy and allowing for quicker access to the file or application the user needs. *Id.* at 2:22-27.

30.     Specifically, the '139 Patent teaches in certain embodiments a method of performing a search using a first partial search string and a second partial search string in the search field, wherein the first and second partial strings are separated by a string separator character in the first search field, and incrementally searching for a first group of documents that has at least one string that corresponds to the first partial string and receiving a second partial string in the first search field, wherein in response to the second partial string, incrementally searches for a second

group of documents each including at least one string that corresponds to the second partial search string.  The '139 Patent further teaches updating the search results as each successive character of the first partial search string and the second partial search string is received respectively in the first search field by identifying one or more documents included in both the first group of documents and the second group of documents, wherein the first partial search string and the second partial search string are non-adjacent in at least one of the identified documents. The '139 Patent further teaches in certain embodiments a method of performing a search where in response to receiving the first and second partial strings the identified documents are displayed.  The '139 Patent also teaches a computing system executing software to execute the claimed search methods.

31.    The methods and systems disclosed in the '139 Patent were neither well-known nor conventional to skilled artisans as of the priority date.  The prior art does not teach or suggest the claimed reactive and incremental searching methods. For example, the '139 Patent teaches a method of performing a search in which the system first receives a first partial search string in a first search field, and a second partial search string in the first search field, wherein the first and second partial search strings are separated by a string separator character in the first search field. When the first partial string is detected, an incremental search is initiated, which can search a plurality of types of documents (including word processing documents and/or emails) that has at least a first word that begins with the first partial string. The search results are then updated with each successive character, including in response to a second partial string.  In response to receiving the second partial string, an incremental search is initiated for a second group of documents that has at least a second word that begins with the second partial string.  The documents that are included in each of the first and second groups of documents can include those that include the term from the first partial search string and the second partial search string and/or documents wherein the first partial search string and the second

partial search string are non-adjacent in at least one of the identified documents. The resulting documents are then displayed for the user.  Prior art methods for searching were much slower and did not allow for incremental updating of search results or the identification of documents wherein the first and second partial strings are non-adjacent in the document.  Thus, the claimed invention specifically improves computer technology at least with regard to the accuracy and efficiency with which searches can be conducted and generally improves user interfaces by providing users with quicker and easier access to desired files or applications using a first and second search string and the ability to identify more relevant documents based on the presence of the first and second partial search strings even when non-adjacent within the document or file.  The claimed invention is thus directed to a technological improvement, and not an abstract idea.

32.    As described above, the '139 Patent's claims are inventive and describe a substantial improvement in the art of computer searching.  Namely, the claims describe methods for performing searches in a manner that is more than just the performance of well-understood, routine, or conventional activities that were previously known in the field.  The conventional searching methods predating the '139 Patent did not involve incrementally updating search results in real time as each successive character is entered.  Additionally, the claimed methods allow users to incrementally search over at least two partial strings and displays results containing both strings, including results wherein the first and second partial search strings are non-adjacent in the same document, a marked improvement over the older searching techniques.  These searching techniques and strategies were not routinely used or conventional before the '139 Patent was filed.

**The '490 Patent**

33.    X1 is the owner by assignment of all right, title and interest, including the right to sue for damages, in and to the '490 Patent.

34.    The '490 Patent is entitled "Methods and Systems for Search

11

Indexing" and names William Gross and Steven Lee Colwell as inventors.  The

'490 Patent issued on February 4, 2020, based on U.S. Application No. 15/495,507,

filed on April 24, 2017.  The '490 Patent expires on November 8, 2024.  A copy of

the '490 Patent is attached to the Complaint as Exhibit 3.

35.    The '490 Patent is valid and enforceable under United States Patent

Laws.

36.    The '490 Patent relates to improvements in computer search

technology and data processing, and more particularly to systems for storing an

index data structure comprising associations between each of a plurality of

character strings to associated files of a plurality of files in which the character

strings are included.[3]  Prior to the claimed invention conventional searching using

existing search engines was slow and cumbersome, for example, requiring a user to

type in search terms, click on the search, and review the results.  '490 Patent at

1:43-46.  If the user was not satisfied with the search results, as would often be the

case where too many results were returned or items that were not of interest were

found, then the user would be required to edit the search terms click search, and

again review the results.  *Id.* at 1:46-50.  In addition, many conventional search

engines only provided for limited search filtering, where the user was limited to

filtering searches by date, file location, and file contents instead of being able to

filter or organize the search results by specific types of search targets such as email,

web pages, or other type of files.  *Id.* at 1:50-53.  Such conventional searching also

required the user to develop deliberate and tedious search stings and strategies.  *Id.*

at 2:6-9.

37.    To address these problems with conventional searching, the '490

Patent discloses novel systems for incremental or reactive searching of a variety of

search targets, including files, emails, email attachments, Web pages, and specific

[3] X1 provides the following general description of the '490 Patent.  This description is not
intended to limit, define, or otherwise affect the construction and/or application of the '490
Patent.

databases, effectively improving and increasing the speed of searching, organizing, and accessing files in a data storage system of a computer system. *See e.g.*, '490 Patent at 2:20-24. Unlike conventional searching, because a search is performed incrementally, the search results are provided or narrowed substantially and immediately after each character in a search string is entered by the user. *Id.* at 2:24-27. This provides the user with immediate feedback as the search string is entered, so the user can quickly decide whether the search string needs to be modified, improving search accuracy and allowing for quicker access to the file or application the user needs. *Id.* at 2:27-32. Additionally, the '490 Patent discloses using an index data structure comprising associations between files and character strings to further improve searching speed and file accessibility. *Id.* at 5:29-36.

38. Specifically, the '490 Patent teaches in certain embodiments a computing system with one or more hardware computer processors, a display device viewable by the user, and a computer readable storage medium storing an index data structure. The index includes a data structure that associates character search strings (including a first and second search string) with files, documents, and the like. *Id.* at 5:6-12. For example Web pages previously viewed in the search application's view pane or area, and optionally, stored Web pages previously viewed using other user browsers, or otherwise stored locally can be indexed. *Id.* at 12-15. Separate indexes can be used for the email, files, cached Web pages, databases and the like, or a single index can be used for the foregoing. *Id.* at 15-18. The '490 Patent also teaches in certain embodiments searching the index data structure for a first one or more of the plurality of files each including at least one string that corresponds to the first search string and searching the index data structure for a second one or more of the plurality of files each including at least one string that corresponds to the second search string. The '490 Patent also teaches updating a set of matching files of the plurality of files as each successive character of the first partial search string and the second partial search string is

received respectively in the first search field by identifying any of the plurality of files included in both the first one or more of the plurality of files and the second one or more of the plurality of files, wherein the first partial search string and the second partial search string are non-adjacent in at least one of the matching files.

39.    The systems disclosed in the '490 Patent were neither well-known nor conventional to skilled artisans as of the priority date.  The prior art does not teach or suggest the claimed reactive and incremental searching systems.  For example, the '490 Patent teaches a system with a searchable index data structure that includes files that associate character search strings (including a first and second search string) with files, documents, and the like.  The '490 Patent also teaches in certain embodiments searching the index data structure for a first one or more of the plurality of files each including at least one string that corresponds to the first search string and searching the index data structure for a second one or more of the plurality of files each including at least one string that corresponds to the second search string.  The '490 Patent also teaches updating a set of matching files of the plurality of files as each successive character of the first partial search string and the second partial search string is received respectively in the first search field by identifying any of the plurality of files included in both the first one or more of the plurality of files and the second one or more of the plurality of files, wherein the first partial search string and the second partial search string are non-adjacent in at least one of the matching files.  Thus, the claimed invention specifically improves computer technology at least with regard to the accuracy and efficiency with which searches can be conducted and generally improves user interfaces by allowing users to search indexed data for first and second search strings and the ability to identify more relevant documents in the indexed data structure based on the presence of the first and second search strings even when non-adjacent within a document or file. The claimed invention is thus directed to a technological improvement, and not an abstract idea.

40.     As described above, the '490 Patent's claims are inventive and describe a substantial improvement in the art of computer searching.  Namely, the claims describe systems for performing searches in a manner that is more than just the performance of well-understood, routine, or conventional activities that were previously known in the field.  The conventional searching methods predating the '490 Patent did not involve incrementally updating search results in real time as each successive character is entered.  Additionally, the claimed systems allow users to incrementally search over at least two strings within an indexed data structure and displays results from with that index data structure containing both strings, including results wherein the first and second search strings are non-adjacent in the same document, a marked improvement over the older searching techniques.  These searching techniques and strategies were not routinely used or conventional before the '490 Patent was filed.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,370,035

41.     X1 incorporates by reference the allegations contained in paragraphs 1 through 40 of this Complaint, as if fully set forth herein.

42.     On information and belief, Microsoft has directly (either literally or under the doctrine of equivalents) and indirectly infringed at least independent claim 10 of the '035 Patent by making, using, selling, offering for sale, and importing in the United States certain laptop computers, including without limitation its Surface Laptop Go 3, Surface Laptop Go 2, Surface Laptop 5, Surface Laptop Studio, and Surface Laptop Studio 2 (collectively, the "Accused Laptop Products").  Each Accused Laptop Product comes installed with Microsoft Windows 10 or 11, which runs infringing searching software, Microsoft Search.  Defendant also separately makes, uses, sells, and/or offers for sale Microsoft Windows 10 and 11 and Windows 365, which can be installed on users' computers to run Microsoft Search (collectively, the "Accused Windows Products").

43.     Support for the allegations of direct and/or indirect infringement may

1   be found in the claim chart that applies claim 10 of the '035 Patent to exemplary

2   Accused Laptop Products and Accused Windows Products, attached hereto as

3   Exhibit 4 (with cited Exhibits 5-8).  These allegations of infringement are

4   preliminary and are therefore subject to supplementation and change.

5        44.   On information and belief, Microsoft has had knowledge and notice of

6   the '035 Patent since at least the filing of its U.S. Patent Application No.

7   12/328,410, filed on December 4, 2008, which cites to the '035 Patent.  Microsoft

8   has also had knowledge and notice of the '035 Patent since at least the filing of this

9   Complaint.

10       45.   Microsoft has committed these acts of infringement without license or

11  authorization from X1.

12       46.   Microsoft is liable for indirect infringement, *i.e.*, both induced and

13  contributory infringement, based on the direct infringement that is the result of

14  activities performed by customers, distributors, end-users, vendors including

15  customer-support and/or manufacturers who use all elements or perform all steps of

16  one or more claims of the '035 Patent.  For example, end users of the Microsoft

17  Accused Laptop Products and/or Accused Windows Products, either literally or

18  under the doctrine of equivalents, infringe one or more claims of the '035 Patent

19  (*e.g.*, claim 10 and one or more of its dependents).

20       47.   Microsoft actively, knowingly, and intentionally induces, and

21  continues to actively, knowingly, and intentionally induce, infringement of the '035

22  Patent under 35 U.S.C. § 271(b) by their customers and end users.  For example,

23  Microsoft actively induces its customers, the end-users of the Accused Laptop

24  Products and Accused Windows Products, to directly infringe the '035 Patent by

25  instructing, directing, and encouraging these end-users to perform the methods of

26  the Asserted Patents using the Accused Products, such that Microsoft is engaged in

27  unlawful inducement of infringement.  On information and belief, Microsoft

28  instructs, directs, and encourages its customers to infringe by providing at least

1  installation/technical manuals, troubleshooting guides, and/or product tutorials.  *See*
2  Exhibits 7 and 8.

3      48.    Microsoft is also liable for contributory infringement under 35 U.S.C.
4  § 271(c) for contributing to and continuing to contribute to the infringement of the
5  '035 Patent by, among other things, providing customers with one or more
6  computing devices utilizing indexed search systems and components thereof that
7  contribute to the infringement of one or more claims of the '035 Patent, including
8  the claims directed to methods of performing a search.

9      49.    On information and belief, Microsoft is engaged in induced and
10  contributory infringement with respect to its importation activities and with respect
11  to its sale after importation.

12      50.    Microsoft's acts of infringement have caused, and continue to cause,
13  damage to X1, and X1 is entitled to recover damages sustained as a result of
14  Microsoft's wrongful acts.

15      **COUNT II – INFRINGEMENT OF U.S. PATENT NO. 9,633,139**

16      51.    X1 incorporates by reference the allegations contained in paragraphs 1
17  through 40 of this Complaint, as if fully set forth herein.

18      52.    On information and belief, Microsoft has directly (either literally or
19  under the doctrine of equivalents) and indirectly infringed at least independent
20  claim 23 of the '139 Patent by making, using, selling, offering for sale, and
21  importing in the United States certain laptop computers, including without
22  limitation its Surface Laptop Go 3, Surface Laptop Go 2, Surface Laptop 5, Surface
23  Laptop Studio, and Surface Laptop Studio 2 (collectively, the "Accused Laptop
24  Products").  Each Accused Laptop Product comes installed with Microsoft
25  Windows 10 or 11, which runs infringing searching software, Microsoft Search.
26  Defendant also separately makes, uses, sells, and/or offers for sale Microsoft
27  Windows 10 and 11 and Windows 365, which can be installed on users' computers
28  to run Microsoft Search (collectively, the "Accused Windows Products").

53.     Support for the allegations of direct and/or indirect infringement may be found in the claim chart that applies claim 23 of the '139 Patent to exemplary Accused Laptop Products and Accused Windows Products, attached hereto as Exhibit 9 (with cited Exhibits 5-8).  These allegations of infringement are preliminary and are therefore subject to supplementation and change.

54.     On information and belief, Microsoft has had knowledge and notice of the '139 Patent since at least the filing of its U.S. Patent Application No. 12/328,410, filed on December 4, 2008.  Microsoft has also had knowledge and notice of the '139 Patent since at least the filing of this Complaint.

55.     Microsoft has committed these acts of infringement without license or authorization from X1.

56.     Microsoft is liable for indirect infringement, *i.e.*, both induced and contributory infringement, based on the direct infringement that is the result of activities performed by customers, distributors, end-users, vendors including customer-support and/or manufacturers who use all elements or perform all steps of one or more claims of the '139 Patent.  For example, end users of the Microsoft Accused Laptop Products and/or Accused Windows Products, either literally or under the doctrine of equivalents, infringe one or more claims of the '139 Patent (*e.g.*, claim 23 and one or more of its dependents).

57.     Microsoft actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce, infringement of the '139 Patent under 35 U.S.C. § 271(b) by their customers and end users.  For example, Microsoft actively induces its customers, the end-users of the Accused Laptop Products and Accused Windows Products, to directly infringe the '139 Patent by instructing, directing, and encouraging these end-users to perform the methods of the Asserted Patents using the Accused Products, such that Microsoft is engaged in unlawful inducement of infringement.  On information and belief, Microsoft instructs, directs, and encourages its customers to infringe by providing at least

installation/technical manuals, troubleshooting guides, and/or product tutorials.  *See* Exhibits 7 and 8.

58.    Microsoft is also liable for contributory infringement under 35 U.S.C. § 271(c) for contributing to and continuing to contribute to the infringement of the '139 Patent by, among other things, providing customers with one or more computing devices utilizing indexed search systems and components thereof that contribute to the infringement of one or more claims of the '139 Patent, including the claims directed to methods of performing a search.

59.    On information and belief, Microsoft is engaged in induced and contributory infringement with respect to its importation activities and with respect to its sale after importation.

60.    Microsoft's acts of infringement have caused, and continue to cause, damage to X1, and X1 is entitled to recover damages sustained as a result of Microsoft's wrongful acts.

## **COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,552,490**

61.    X1 incorporates by reference the allegations contained in paragraphs 1 through 40 of this Complaint, as if fully set forth herein.

62.    On information and belief, Microsoft has directly (either literally or under the doctrine of equivalents) infringed at least independent claim 1 of the '490 Patent by making, using, selling, offering for sale, and importing in the United States certain laptop computers, including without limitation its Surface Laptop Go 3, Surface Laptop Go 2, Surface Laptop 5, Surface Laptop Studio, and Surface Laptop Studio 2 (collectively, the "Accused Laptop Products").  Each Accused Laptop Product comes installed with Microsoft Windows 10 or 11, which runs infringing searching software, Microsoft Search.  Defendant also separately makes, uses, sells, and/or offers for sale Microsoft Windows 10 and 11 and Windows 365, which can be installed on users' computers to run Microsoft Search (collectively, the "Accused Windows Products").

63.    Support for the allegations of infringement may be found in the claim chart that applies claim 1 of the '490 Patent to exemplary Accused Laptop Products and Accused Windows Products, attached hereto as Exhibit 10 (with cited Exhibits 5-8 and 11).  These allegations of infringement are preliminary and are therefore subject to supplementation and change.

64.    On information and belief, Microsoft has had knowledge and notice of the '490 Patent since at least the filing of its U.S. Patent Application No. 12/328,410, filed on December 4, 2008.  Microsoft has also had knowledge and notice of the '490 Patent since at least the filing of this Complaint.

65.    Microsoft has committed these acts of infringement without license or authorization from X1.

66.    Microsoft's acts of infringement have caused, and continue to cause, damage to X1, and X1 is entitled to recover damages sustained as a result of Microsoft's wrongful acts.

## **JURY DEMAND**

Plaintiff X1 respectfully demands a jury trial pursuant to Fed. R. Civ. P. 38 on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, X1 respectfully demands judgment in its favor and against Microsoft as follows:

a.  A judgment that Defendant has infringed the '035 Patent;

b.  A judgment that Defendant has infringed the '139 Patent;

c.  A judgement that Defendant has infringed the '490 Patent;

d.  A permanent injunction restraining and enjoining Defendant and its officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, attorneys, and all others in active concert or participation with any of the foregoing, from directly or indirectly infringing the '490 Patent;

e.  A judgment that awards X1 all appropriate damages under 35 U.S.C. § 284 for Defendant's past infringement, and any continuing or future infringement of the Asserted Patents, up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 to adequately compensate X1 for Defendant's infringement;

f.  An adjudication that Defendant's infringement of the Asserted Patents has been willful and deliberate;

g.  An adjudication that X1 be awarded treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Defendant's willful and deliberate infringement of the Asserted Patents;

h.  An adjudication that this case is exceptional within the meaning of 35 U.S.C. § 285;

i.  An adjudication that X1 be awarded costs and attorney's fees under 35 U.S.C. § 285; and

j.  An award of such other and further relief as the Court deems proper.

Dated: December 19, 2023

/s/ Natasha E. Daughtrey
Natasha E. Daughtrey (SBN 319975)
NDaughtrey@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 South Figueroa Street
41st Floor
Los Angeles, CA 90017
Tel: (213) 426-2500

I. Neel Chatterjee (SBN 173985)
NChatterjee@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: (650) 752-3100

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Patrick J. McCarthy (SBN 990490)
(*pro hac pending*)
PMcCarthy@goodwinlaw.com
Sravan K. Tumuluri (SBN 90013874)
(*pro hac pending*)
STumuluri@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, DC 20036
Tel: (202) 346-4266

Christie L. Larochelle (SBN 705561)
(*pro hac forthcoming*)
CLarochelle@goodwinlaw.com
Kristin M. Beale (SBN 703205) (*pro hac forthcoming*)
KBeale@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel: (617) 570-1000

Jeremy D. Knight (SBN 6047260) (*pro hac forthcoming*)
JKnight@goodwinlaw.com
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Tel: (212) 813-8800

*Attorneys for Plaintiff X1 Discovery, Inc.*